May it please the court. I'm Austin Rainer from Sullivan and Cromwell. I'm pro bono counsel for petitioner Rigoberto Antonio Torres and if I may I'd like to reserve four minutes for rebuttal please. You'll have to keep track of your time. I'll start with a jurisdictional question. This court should hold that Mr. Torres's initial petition sprang forward to take effect upon the BIA's reissuance of its order. Four rationales support this conclusion. First, the other circuits that have addressed this precise circumstance have held that the petition can spring forward upon reissuance. By this precise circumstance I mean where the BIA issues a final order, the petitioner files an untimely petition for review, the BIA reissues its order, and the petitioner doesn't file a second petition for review. Those are the facts here and the second and the third circuits in both Lewis and Hamilton addressed precisely the same fact pattern. And those courts held that the petition ripened upon reissuance. That rule remains the rule in those circuits. They've had no problems with that rule and we think this court should join its sister circuits and treat this fact pattern the same way. Second, the text of the statute dictates that this petition ripens. The text states that the petition for review shall be filed not later than 30 days after the final order of removal. Anytime you have a petition filed prior to the final order of removal it obviously complies with this timing deadline. Counsel, do we even have to reach this issue here? Can't we construe the filing as an amended petition for review that was timely from the reissued decision? Yes, absolutely. And if we did that would there be any need to decide this issue that has divided circuits and scholars and others to decide whether there's a ripening of a premature petition for review? We think the court can avoid the whole jurisdictional question by construing Mr. Torres' letters of October 6 and 13, 2017 as timely filed petitions for review of the reissued order. Mr. Torres was pro se when he filed those letters. Counsel wasn't appointed until the next year. They were filed within 30 days of the reissued order and they evidenced Mr. Torres' ongoing desire to seek review of the BIA's removal order. The contents of Supreme Court and this court have held that in construing these kinds of rules of procedure they should be interpreted liberally, particularly in the context of pro se submissions like those here. And actually, the government can correct me if I'm wrong, but I took their position to be what I've just described, that it was timely by considering this pro se filing to be within 30 days of the decision. Yes, Your Honor. So the government doesn't dispute that these The government doesn't want us to go the other route you're advocating? So the government does disagree with us on the ripening question. Right. Exactly. But the government agrees that the October letters qualify as timely filed petitions for review, which, as Your Honor noted, would sort of obviate the need to address the whole ripening question. And we certainly agree with the government that these letters achieve functional compliance with the governing petitions for review. All right, so as soon we find jurisdiction, let's get to the nub of it. Right. So on the substantive question here, this court should hold that my client is not deportable because his felony coercion conviction doesn't qualify as a crime of violence. The crime of violence is one that necessarily involves violent force in every instance, and violent force has been defined by the Supreme Court in this circuit as substantial force capable of injuring person or property. Here, the felony coercion statute under Nevada law can be satisfied with de minimis force, and Granby State makes this absolutely clear. So in Granby State, the Nevada Supreme Court upheld a felony coercion conviction based on merely de minimis force. The defendant there swatted a cell phone out of the victim's hands twice, and the Nevada Supreme Court brushed aside the force there. It held that merely preventing the person from using his cell phone was sufficient to uphold the conviction. Under this court's precedents, the degree of force used in Graham clearly doesn't qualify as violent force. There's a number of precedents in this line. In Flores Cordero, for example, the court held that a resisting arrest conviction under state law didn't categorically involve the use of violent force. And in support of that conclusion, it pointed to a conviction in which the defendant was kicking the arresting officers. The court characterized this as a minor scuffle, and it said that's not sufficient to satisfy the violent force threshold. Similarly, in Walton, the court asked whether a robbery conviction categorically involved the use of violent force. And again, it pointed to several convictions that it said didn't involve the use of violent force, including one where the defendant yanked a purse off a woman's shoulder, including another where the defendant knocked the victim off balance. And again, all of these cases indicate that minor scuffles aren't sufficient. And the degree of force used in Graham is analogous to the degree of force used in these cases. And we would argue that, in fact, compared to the force at issue in Flores Cordero, where the defendant was actually kicking the arresting officers, the degree of force in Graham is substantially less than that. We think that under these precedents, this is an easy case. Graham resolves the substantive question in our favor. And we think it's telling that, although we discussed these precedents in our opening brief, that the government doesn't reply to them in its opposition brief. I think it really has no answer to any of these precedents. I'm wondering, did the BIA and IJ have had Johnson issued before they issued their decisions? Because they don't cite Johnson. They don't perform the analysis required by Johnson. Right. They don't. They just do a pure textual analysis. And Johnson had been issued. So the BIA's decision was in 2017. And, of course, at the BIA, Mr. Torres was proceeding pro se. So I think he raised the categorical approach. He asked them to terminate proceedings. The removal question is definitely preserved here. But I think part of what happened there was that, you know, he just didn't have an attorney to really push these legal arguments for him. But it is correct, Your Honor, the BIA really doesn't go into any of this case law or do a full Johnson analysis. Even if the court disagrees with our reading of Johnson, it should still rule in Mr. Torres's favor by adopting the reasoning that a panel of this court adopted in Miguel Mariano. There, the court said that Nevada follows a canon of construction, that similar terms and similar statutes should be interpreted consistently. Is that one of our mem dispos? There's three mem dispos that have previously ruled in the same way you're advocating today. Is that one of them? Correct. This is a non-presidential decision. But we think its reasoning is correct. But I think you're referring to an analogy to a misdemeanor on force. Is that what you're talking about? So in the battery statute, force is just an element of the crime. And it can be a felony or misdemeanor, I believe. But yes, it's not an aggravating factor, as it is for Nevada felony coercion. But again, battery uses the term force or violence. Felony coercion uses the term physical force. And we don't think that that mere difference in language is sufficient. The Nevada courts apply this canon even when the terms are similar but not identical. And the government suggests, Your Honor, in its brief, that because physical force serves sort of a different function in the felony coercion statute, that you can't import the meaning of force in the battery statute. Do you need to succeed on this argument to succeed? Or is Graham sufficient? Graham is absolutely sufficient. This is an alternative argument, Your Honor. And our view is that using the battery statute's definition of force still preserves the structural integrity of the felony coercion statute. Felony coercion covers a wide range of conduct, some of which involves no physical force at all. So even if you interpreted the physical force element of felony coercion to include mere de minimis force, there would still be a wide range of misdemeanor conduct under that statute. And the sort of two-tiered structure of the statute would be preserved. So we think it does make sense and retains the coherence of the felony coercion statute to import the battery statute's definition. If there are no further questions, I'll reserve the remainder of my time for rebuttal. You may do that. Thank you. Good morning, Your Honors. May it please the Court. Jessica Daughert for the government. I will first address the jurisdictional issue simply to agree that, yes, this Court should construe the pleadings from October as timely filed petitions for review of the reissued decision. That is the most straightforward and clear way to proceed in this case. Liberal construction of pro se pleadings, considering these these pleadings themselves challenge the substance of the board's reissued decision. They were filed within 30 days. That's what's required by this court. What is it about the ripening argument that troubles the government? I'm happy to discuss the ripening argument, Your Honor. The government would suggest that this court side with the Fifth and Sixth Circuits and not the Second and Third Circuit. Why? Because particularly in this case, it's important to consider the finality issue. And there was a final decision. This is not akin to the cases. But it wasn't delivered to him. It was delivered under the regulations. Correct. It was not delivered to him, but it was served per the regulations. That seems to be happening more and more that because the government is, I mean, just in my experience with the cases I'm seeing that because the government is moving individuals who are detained from center to center to center, decisions come down and they don't get to the detainee. And it's kind of a problem that somebody is going to end up having to deal with. Yeah, I actually tried to look into this a little bit in preparing for argument this morning and figure out exactly what happened in this case. And I have all of the facts, if that's at all relevant to the court, about when he was transferred and where he went to different places. I'm not suggesting that we're going to necessarily reach the ripening in this case, but we're going to have to sooner or later. Correct. And I think that the important point to make is that there are several aspects to ripening, and one of them is finality. And in the cases that this court has addressed ripening, Abdus Salaam and other instances, Prieto, it has talked about ripening in terms of whether or not the proceedings before the agency are final. In all of those cases, something had been remanded, whether it was for background checks or for further analysis. You can distinguish all the remand cases under Abdus Salaam, which, you know, I wrote. You can just take those and wrap them up and put them in one corner. This is a different problem. Which is why I think this case is not the case to discuss ripening. And so I'm happy to discuss the ripening case law, but I think this is not the proper vehicle for this court to consider ripening because there is no finality issue. There was a final decision. This is much more akin to the case that was submitted earlier today, the Prieto decision, in which there was a premature petition that was filed on the basis of a denial of a stay of removal. That may present a little bit more of a tricky situation. That was an interlocutory appeal, essentially, over which there's also no jurisdiction. Right, right. That one troubles me more. I agree with you. I agree with you. That one troubles me more in terms of that legal question that's the subject of the appeal is different and separate. So it gives me a harder time, too. Yeah, and then taking in the complication of receiving service is also a different issue because the regulations and this court's case law in Singh requires service and compliance with the regulations, which happened here. Unfortunately, that wasn't sufficient for him to get the decision. And so the regulations, there's no equitable tolling in these situations. I mean, that was made clear in Singh. There's no equitable tolling to allow for somebody who's moved in detention facilities. There could be. I mean, if you go back to the Soka Gonzalez line of cases where it's the responsibility of the government, it's affirmative conduct by the government. Anyway, that's all hypothetical. Let's get to the matter. I agree. I would just submit that this is not the case to discuss ripening in that there's a way to avoid that jurisdictional question here. In terms of the merits of this case, the government believes that if it comes down to Graham, Graham is sufficient force to constitute violent force under Johnson. We're not talking about simply de minimis action. Yes, there was swatting of a phone, which may sound minimal in those words, but the reality was is that that case involved an individual who was trying to call 911 and was holding on to the phone and trying to do so. And the force needed to swat a phone out of a hand is not de minimis. The Supreme Court is addressing a similar issue in Stokeling right now. And Justice Roberts even addressed this necessary force. And at the beginning of that argument, he discussed an interaction he had with his law clerks in trying to get them to swat a dollar bill or to pull a dollar bill out of his hand. And he said it takes a surprising amount of force to do so if somebody's trying to hold on to that dollar bill. And so in looking at the context of Graham, not just simply phone swatting, this isn't a minor scuffle, this was someone that was trying to call 911. But the question, but that isn't the issue, I don't think, because the question is whether violent physical force is required. Contextually, the person may have been, you know, ordering pizza. It doesn't really bear on the question of whether Nevada permits something less than violent physical force to underlie this conviction. And it seems to me that just removing the context, it doesn't sound like much. It really doesn't. And there's no surrounding description of physical force saying, you know, he just knocked it out of his hand. I think you can't remove the context. I don't think that that's what Dwayne is offering. You have to show a physical pain or injury. Isn't that what you would need to show? And you wouldn't do that by slapping a phone off somebody's hand. Well, you would have to show capable of causing physical pain or injury to the person or the property. And so that's where this case differs from the line of sentencing guidelines cases. Under the aspect or object aspect. And that's why we would distinguish Edling, which was this court's decision of last summer that was later amended. And that case took out the reference to the force against the property. And so because it could be forced against a property, that's what it was here in Graham. The swatting of the phone is the property and it's capable of causing injury to the property. And that's what's required under Johnson and under the statute. And in terms of the physical force that's required under Nevada, you do have to consider it in context. That's what Dwayne Alvarez requires. That's what's required for all that's what Johnson requires. And looking to what the statute is, you know, you kept saying he was calling 9-1-1. That's why I'm asking, is the result different if he were calling to order a pizza? It just doesn't make sense to me that it was trying to call. It matters in this case because of the coercion of statute itself that requires someone that the criminal conduct is requiring is an action that precludes someone from doing something they're otherwise entitled to do. Well you're entitled to order a pizza just like you're entitled to call 9-1-1. Then the argument would go the same. It would be if there was a physical force that precluded someone from doing something they were entitled to do, whether that was calling for dinner. It all still comes back to the question whether knocking a phone out of someone's hand is sufficient under the federal definition. Agreed. And the government's position, and I don't contest that, the government's position is that that is not de minimis. It is not akin to purse snatching where someone does not realize that the purse is gone until they turn around and look. Or the de minimis minor scuffles that are talked about, a strong physical force. Again I would submit that twice swatting a phone out of someone's hand, especially that second time the person must know it's coming and is holding on fairly tightly to that phone, that that's not a de minimis force. And while a phone may be a small object, it still requires a strong enough physical force to make it leave the person's hand. So our position would be that it's not a de minimis action. So I think there's a lot of absurdity in this whole categorical approach analysis that we have to do repeatedly with every, you know, more and more and more state criminal codes. But one of the things that's attention, intention here that, um, that I'm seeing and, and I don't know how it's going to ultimately get worked out, but the state in this case, Nevada, is, has the incentive to bring more and more conduct within the realm of its criminal statute to hold people criminally culpable for these kinds of things. And the more that the state embraces a larger realm of conduct, um, to punish under this statute, which I think Nevada is going very far here, um, the less likely it's going to be categorically a crime of I think this is happening with the states having one incentive and the federal government having a different incentive in terms of wanting to deport people who are convicted of these crimes. And I think that's the tension you're seeing in this case. Well, and I think the tension goes even further in this case. If we're going to look at all of the facts of what happened, is this person committed? We can't look at that. That's another one of the absurdities of this. So we can't even go there. I agree. We can't even look at what the facts of what actually happened may or may not align with what we're talking about today. Um, but the reality is, is that the Supreme Court has instructed us time and time again that this is what we have to do. And we have to look at what the cases actually say and what's actually been criminalized and prosecuted. And so we can't presume and hypothetically analyze that the state of Nevada will... My point exactly is that that's what they're doing. They're punishing this really de minimis stuff. But that means it takes you out of the categorical realm of removability under the federal INA. But the cases that have actually come out of Nevada, our position would be, don't reach that level of taking us out of this de minimis action. All of the, all of the actual cases that we can look to under Dwayne Alvarez in Nevada discussing felony coercion, which has this aggravating element of physical force, which is different than battery, and I'm happy to discuss that. But all of the actual cases out of Nevada actually involve this physical force. Carlisle talked about the force of one victim to aid in holding a leg of another victim while he raped her. Colvin talked about the threat to hit a child in his care, like he threatened one child, I'll hit you if you don't also hit this other child. All of these cases talk about actual physical force in, in getting somebody to do something that they wouldn't otherwise do. And so the cases that are listed in Nevada demonstrate that this level of physical force that's required is more than de minimis. Well, are there any cases on the Nevada law where the court found that the force used was de minimis? There are no case, the force... Was it always found to be sufficient? Um, there are no cases in Nevada that have discussed the level of force necessary to qualify for physical force for the aggravating element for coercion. And so the cases that I cite to are cases that have, that the conviction has been found to be sufficient, either based on evidence or whatever challenge there was to the, to the conviction itself. And so we can look to the facts of those, but there's been no cases that talk about this physical force element. The other statutes in Nevada that have this same aggravating physical force element, there's several of them that we cite in our brief, preventing or dissuading a person from testifying, extortion of confession of an arrestee, oppression under color of law. There are no cases discussing the physical force element of those. There is one statute intimidating a public officer, and that's Nevada 199.300. And in that, for that statute, there were two cases that I found that kind of discussed this general realm. And one was Jones, and that's 386 P. 3rd 1000. And that's a 2016 case, and that involves someone holding a knife up to somebody's neck, threatening remarks. So that, I would argue, would be an immediate threat of physical force. And another one would be Deshler. And that was threats while in an ambulance. And that was found not to be sufficient because the individual did not have the capacity to carry out the threats. He was restrained while in an, in an ambulance being transported someplace to a hospital, or I would restrain the threats that he made a physical force towards the officer were insufficient because he did not have the capacity to carry them out. So I would, that one would not be sufficient physical force under the statute. And then the third, the final one would be placing a person in a house of prostitution in Nevada. And the one case I found there is an unpublished case. It's Sharp 2014 Westlaw 1396711. And that involves someone grabbing the victim by their hair and pulling them into a house. And they found that to be sufficient. That was sufficient physical force for placing a person in a house of prostitution for it to be that aggravating element to become a felony. So our position would be that all of these aggravating elements, when physical force is used as an aggravating element in Nevada law, that it does not become a felony unless it's necessary under Johnson. The court has no further questions. I don't believe so. Thank you. And you have some rebuttal time remaining. Yes, Your Honor. I have just three brief points I'd like to make in rebuttal. The first is that, as Your Honor pointed out, nothing in this opinion, the opinion Graham, suggests that violent force was required. So regardless of what facts we speculate about or context, the court brushed aside the sufficient, the sufficiency of the evidence challenge, and it didn't talk about the degree of force. It just treated this as sufficient. And it's not sufficient because separating a person from their property is not alone enough under this court's precedence to find the existence of violent force. So my opponent analogized this case to purse snatching, where the victim doesn't even realize that the purse has been taken, and says that the level of force involved in Graham was greater than that. While true, this court has also held that taking property from someone with a gun that does alert them to its taking still doesn't qualify as violent force. There's a number of cases that say this. Walton, for example, the defendant jerked the purse off the victim's shoulder. Molinar, there was a tug of war over a wallet with a police officer and the defendant. A tug of war back and forth, and the police officer said that his arm flew up in the air when he lost the tug of war. The court said, again, that's not sufficient. Strickland, there was a tug of war over a purse. The court said, again, this is not sufficient. The degree of force used in Graham is not greater than any of the degree of force used in any of these cases. The government doesn't have a single analogous case from this circuit that would indicate that this case doesn't involve the use of violent force. Second point I'd like to make is that the mere capacity for some kind of minor injury isn't sufficient for something to qualify as violent force. In Walton, this court held that the force has to be substantial, it has to be strong, and the capacity for minor injury is not sufficient. All we have in Graham is the capacity for minor injury. The phone wasn't broken there, the battery popped out of the back. So we would say there's no property damage at all. But even if the court considers that minor property damage, there still wasn't substantial or strong force involved in that case. And then the last point I'd like to make is that the government has cited a number of convictions that did involve violent force under Johnson, convictions under the felony coercion statute. And we don't contest that those convictions exist, but the categorical approach focuses on cases at the margins of the statute. And here we have an actual conviction in Graham that indicates there is a realistic probability that the felony coercion statute can be satisfied by nonviolent force. And in cases like Nunez and Dixon, this court has said if you have one real conviction, it doesn't matter how many other convictions involve violent force, that one conviction involving nonviolent force is sufficient to take the statute outside the realm of the federal definition. So we would ask this court to exercise jurisdiction, to vacate the BIA's order of removal, and to remand with instructions to terminate proceedings. If the court has no further questions, we'll rest. I don't believe we do. Thank you very much. The case just argued is submitted, and we thank both counsel for their excellent arguments. And we also particularly appreciate counsel taking a pro bono appointment to argue this case.
judges: Wardlaw, Graber, Robreno